UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION TO UNSEAL DOCKETS RELATED TO THE INDEPENDENT COUNSEL'S 1998 INVESTIGATION OF PRESIDENT CLINTON | Misc. Action No. 18-00019 (BAH)<br><br>Chief Judge Beryl A. Howell<br><br>**REDACTED** |

# ORDER

Pending before the Court is the Department of Justice's ("DOJ's") Response to CNN's Petition to Unseal, ECF No. 20, in which DOJ offers its views as to whether certain Miscellaneous matters arising from Independent Counsel Kenneth W. Starr's investigation in 1998 of then-President William Jefferson Clinton may be unsealed, in full or in part, as requested by petitioner Cable News Network, Inc. ("CNN"), *see* CNN/Polantz Request to Unseal Dockets Related to the Independent Counsel's 1998 Investigation of President Clinton ("CNN/Polantz Unsealing Request") at 1, ECF No. 1.  In its request, CNN identified eight sealed Miscellaneous dockets that were referenced in the Independent Counsel's report to Congress, *see generally* Communication from Kenneth W. Starr, Independent Counsel, Transmitting a Referral to the United States House of Representatives Filed in Conformity with the Requirements of Title 28, United States Code, Section 595(c) ("Starr Report"), H.R. DOC. NO. 105-310 (1998).  Former President William Jefferson Clinton, who has intervened in this matter, then identified three additional docket numbers that he believed should be unsealed, *see* Status Report of Former President Clinton at 2–3, ECF No. 15, a recommendation with which CNN concurs, *see* CNN's Resp. to Status Report of Former President Clinton at 2–3, ECF No. 16.  At the Court's request, DOJ promptly reviewed these eleven dockets and has provided its views as to whether the

documents remaining under seal in these matters may be unsealed.  *See* Order, dated Feb. 12, 2018, ECF No. 3; Minute Order (Feb. 23, 2018).

Upon review of DOJ's proposed unsealing and redactions, the submissions of CNN and former President Clinton, and review of the eleven dockets at issue, it is hereby

**ORDERED** that DOJ, by Friday, April 13, 2018, supplement its response, after consultation, as appropriate, with former President Clinton's counsel or other interested parties, regarding the following items:

**(1)** *Misc. No. 98-55.*
    a. **Document 59** ███████████████████████████ and **Document 60**, at page 2 ███████████████████████████

**(2)** *Misc. No. 98-77.*
    a. ███████████████████████████
    b. **Document 7** is a Memorandum Opinion quashing a grand jury subpoena to Terry Lenzner on the basis of attorney-client privilege and the work-product doctrine, which litigation involving Mr. Lenzner is referenced in the Starr Report, Vol. II at 199–200.  Please explain why this Memorandum Opinion should be protected in full from disclosure under Rule 6(e) or other applicable principle.

**(3)** *Misc. Nos. 98-95, 98-96 and 98-97.*
    a. **Misc. No. 98-95, Document 49** at 13; **Misc. No. 98-96**, **Document 19** at 13; and **Misc. No. 98-97, Document 17** at 13 each contain a sentence regarding the number of former or current White House employees who had been interviewed by the Independent Counsel or had testified before the grand jury. ███████████████

The Starr Report, however, includes a Memorandum Opinion from Misc. No. 98-278, stating that "The OIC has issued 23 subpoenas *duces tecum* to the White House since the beginning of its investigation and has issued one to President Clinton individually. Declaration of Julie A. Corcoran ¶ 4.  In addition, the OIC interviewed eighty current

or former White House employees during its investigation and thirty-five current or former White House employees have testified before the grand jury. Declaration of Patrick F. Fallon, Jr. ¶¶ 4-5." Starr Report, Vol. VI at 2485. In light of this disclosure in the Starr Report, please explain whether the proposed redaction is warranted in these three matters.

**(4) Misc. No. 98-148.**
   a. **Document 1** references, with citations, the deposition of John Kelleher, former General Counsel for the Secret Service, which deposition was taken in lieu of testimony before the grand jury. ███████████████████████████ ███████████████ Given that the Starr Report mentions that Mr. Kelleher "assert[ed] the 'protection function' privilege and the governmental attorney-client privilege," Starr Report, Vol. II at 194, please explain why the references and citations to Mr. Kelleher's deposition should be protected from disclosure under Rule 6(e).

   b. **Document 3**, **Exhibit 2** is Mr. Kelleher's declaration, which discusses his deposition rather than any grand jury testimony. Similarly to the above request, given that the Starr Report mentions that Mr. Kelleher "assert[ed] the 'protection function' privilege and the governmental attorney-client privilege," Starr Report, Vol. II at 194, please explain why this declaration should be protected from disclosure under Rule 6(e).

   c. **Document 3, Exhibits 1, 3, 4**, are declarations of former Directors of the Secret Service ███████████████████████████████████████, respectively, which declarations discuss Secret Service training procedures, methods of protection, the positioning of Secret Service officers, simulations run by the Secret Service, and other details of methods and practices, including photographs identifying the placement of Secret Service officers around the President. Please explain whether any redactions to these declarations are warranted to protect any law-enforcement interests.

**(5) Misc. No. 98-202.**
   a. **Document 6 at 1–2, 4–5** references ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████ Please explain why the language proposed for redaction should be protected from disclosure under Rule 6(e).

**SO ORDERED.**

Date: April 5, 2018

_____
BERYL A. HOWELL
Chief Judge