# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION TO UNSEAL
DOCKETS RELATED TO THE
INDEPENDENT COUNSEL'S 1998
INVESTIGATION OF PRESIDENT
CLINTON

Misc. Action No. 18-00019 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

Pending before the Court is a request from petitioner Cable News Network, Inc. ("CNN")

and its journalist Katelyn Polantz to unseal eleven Miscellaneous dockets associated with the

1998 investigation by Independent Counsel Kenneth W. Starr into the relationship of former

President William Jefferson Clinton with a former White House intern.  *See generally* Request to

Unseal Dockets Related to the Independent Counsel's 1998 Investigation of President Clinton

("CNN/Polantz Unsealing Request"), ECF No. 1.  Mr. Starr's investigation of the former President

had begun four years earlier in 1994, when a Special Division of the D.C. Circuit appointed him

as statutory independent counsel to take over an investigation of certain business transactions by

then-President Clinton while he was Governor of Arkansas in the 1980s.  *In re Madison Guar.*

*Sav. & Loan Ass'n*, No. 94-1, 1994 WL 913274, at *1 (D.C. Cir. Special Div. Aug. 5, 1994).[1]

In 1998, shortly after former President Clinton answered written discovery requests in a

civil lawsuit against him involving claims of sexual harassment, the Attorney General, on behalf

---

[1]     The Independent Counsel investigation began on January 20, 1994, when then-Attorney General Janet
Reno appointed Robert B. Fiske as "regulatory independent counsel to investigate allegations of questionable
business transactions by then-President William Jefferson Clinton while he was Governor of Arkansas in the
1980's."  *In re Madison Guar. Sav. & Loan*, 389 F.3d 1298, 1300 (D.C. Cir. 2004).  On August 5, 1994, a Special
Division of the D.C. Circuit appointed Starr as statutory independent counsel to take over Fiske's investigation.  *In
re Madison Guar. Sav. & Loan Ass'n*, 1994 WL 913274, at *1.  Starr served as Independent Counsel until his
resignation on October 18, 1999, at which point Robert W. Ray was sworn in as the final Independent Counsel
overseeing this investigation, a final report for which was issued in 2001.  *See* ROBERT W. RAY, FINAL REPORT OF
THE INDEPENDENT COUNSEL IN RE MADISON GUARANTY SAVINGS AND LOAN ASSOCIATION Vol. I, App. 4 at xxxiv
(Jan. 5, 2001), available at https://www.gpo.gov/fdsys/pkg/GPO-ICREPORT-MADISON/content-detail.html.

of the Independent Counsel, requested that the jurisdiction of the Office of Independent Counsel ("OIC") be expanded to permit inquiry into "whether Monica Lewinsky or others had violated federal law in connection with the *Jones v. Clinton* case." KENNETH W. STARR, COMMUNICATION FROM KENNETH W. STARR, INDEPENDENT COUNSEL, TRANSMITTING A REFERRAL TO THE UNITED STATES HOUSE OF REPRESENTATIVES FILED IN CONFORMITY WITH THE REQUIREMENTS OF TITLE 28, UNITED STATES CODE, SECTION 595(C) ("Starr Report"), H.R. DOC. NO. 105-310 (1998), Vol. I at 8. The OIC suspected that the former President may have lied under oath, in his written responses, about his sexual relations and sought to investigate whether the former President or his agents had pressured witnesses in the civil case to "lie in order to benefit the President." *Id.* at 2–3, 7–8. A Special Division of the U.S. Court of Appeals for the District of Columbia Circuit ("Special Division") approved this request and expanded the OIC's authority to investigate "whether Monica Lewinsky or others suborned perjury, obstructed justice, intimidated witnesses, or otherwise violated federal law," *In re Madison Guar. Sav. & Loan Ass'n*, No. 94-1, 1998 WL 472444, at *1 (D.C. Cir. Special Div. Jan. 16, 1998), *reprinted in* Starr Report, Vol. II at 6–7, thereby shifting the focus of the OIC's investigation from the former President's business dealings to his relationship with a former White House intern.[2]

This latter investigation culminated, in September 1998, with a report totaling over 8,000 pages, including multiple Appendices and Supplemental Materials, to the U.S. House of Representatives. In that Report, Starr highlighted three acts of former President Clinton uncovered in the investigation into the former President's relationship with a former White House intern that "may constitute grounds for an impeachment": (1) "lying under oath,"

---

[2] The expanded authority also permitted the OIC to investigate "related violations of federal criminal law," "any obstruction of the due administration of justice," and "any material false testimony or statement in violation of federal criminal law, arising out of his investigation." *In re Madison Guar. Sav. & Loan Ass'n*, 1998 WL 472444, at *1.

(2) "obstructi[ng] justice," and (3) making "false statements to the American people about his relationship with Ms. Lewinsky" and "attempt[ing] to conceal the truth about his relationship with Ms. Lewinsky from the judicial process" in the sexual harassment case. Starr Report, Vol. I at 165, 204, 210.[3] Among those over 8,000 pages were citations to and quotations from transcripts of grand jury testimony and other grand jury documents, as well as details about litigation over compliance with grand jury subpoenas—information that was protected against disclosure by Federal Rule of Criminal Procedure 6(e) but was nevertheless disclosed pursuant to an order from the D.C. Circuit's Special Division, "for purposes of Federal Rule of Criminal Procedure 6(e)(3)(C)(i)," permitting the Independent Counsel to "disclos[e] [ ] all grand jury material that the independent counsel deems necessary" to comply with his obligation of reporting to Congress. Starr Report, Vol. II at 10; *see also* FED. R. CRIM. P. 6(e)(2)(B) (prohibiting the disclosure of "matter[s] occurring before the grand jury" with certain exceptions).[4]

Set against this extraordinary unveiling of grand jury material, CNN now seeks to unseal and make publicly available the docket numbers and documents filed in a total of eleven matters

---

[3]     The investigation into former President Clinton's relationship with a former White House intern did not result in any criminal charges against any person. The OIC's original investigation into former President Clinton's business and land dealings, however, resulted, in the first year of the investigation, in five indictments and five convictions, s*ee* RAY, *supra* note 1, Vol. I, App. 5 at cii–cx, three of which indictments predated the OIC and were initiated by prosecutors in the Eastern District of Arkansas, *id.* at i. Over the next six years of the OIC investigation, ten indictments and four convictions were obtained in Year 2 (1995); two indictments and three convictions were obtained in Year 3 (1996); one conviction was obtained in Year 4 (1997); six indictments and two convictions were obtained in Year 5 (1998); and one conviction was obtained in Year 6 (1999). *Id.* at cii–cx.

[4]     In this order, the Special Division of the D.C. Circuit granted the Independent Counsel's "Ex Parte Motion for Approval of Disclosure of Matters Occurring Before a Grand Jury," which motion remains under seal with the D.C. Circuit. Starr Report, Vol. II at 10. As noted, the D.C. Circuit predicated the disclosure authorization on "Federal Rule of Criminal Procedure 6(e)(3)(C)(i)," which is now codified at Rule 6(e)(3)(E)(i) and provides that a court may authorize disclosure of a grand jury matter "preliminarily to or in connection with a judicial proceeding." FED. R. CRIM. P. 6(e)(3)(E)(i). Consideration by the House of Representatives, even in connection with a constitutionally sanctioned impeachment proceeding, falls outside the common understanding of "a judicial proceeding." *Cf. In re Petition to Inspect & Copy Grand Jury Materials*, 735 F.2d 1261, 1268, 1271 (11th Cir. 1984) (concluding that a judicial investigating committee "is at least closely analogous" to a judicial proceeding, while noting that "impeachment proceedings before Congress, which are a possible outcome of this investigation, are not by a 'court,' although the Congress becomes something like a court for this purpose").

related to the OIC's investigation of former President Clinton's relationship with a former White House intern. These docket numbers were previously under seal, and therefore even the unsealed documents in these dockets were not publicly available. As an initial matter, upon receiving CNN's request, the Court directed the Clerk's Office to unseal the docket numbers and captions associated with the seven sealed matters initially identified by CNN and to "make publicly available promptly" on the Court's Case Management/Electronic Case Filing (CM/ECF) system and Public Access to Court Electronic Records ("PACER") systems these seven Miscellaneous matter numbers, "as well as the documents from those matters that have been revealed in full in the Starr Report." Order, dated Feb. 12, 2018 ("Feb. 12, 2018 Order") at 3, ECF No. 3. At the Court's request, the Department of Justice ("DOJ") promptly examined all eleven dockets and provided its views on whether the material in these eleven dockets may be unsealed. *See* DOJ Resp. CNN's Pet. Unseal ("DOJ Resp.") at 1, ECF No. 20. For the reasons discussed below, the eleven dockets at issue will be largely unsealed and made publicly accessible on CM/ECF and PACER.

## I.    BACKGROUND

Petitioner CNN submitted a request, dated February 9, 2018, to unseal certain Miscellaneous matters arising from Independent Counsel Starr's 1998 investigation into then-President Clinton. *See* CNN/Polantz Unsealing Request at 1. Specifically, CNN averred that "these matters were widely covered by the media at the time," *id.*, and that "basic information" about some of these matters had been "made public through the Independent Counsel's publication" of his final report to the U.S. House of Representatives, *id.* at 3. *See also generally* Starr Report. In its request, CNN identified eight Miscellaneous matters, which it described as follows:

| 98-mc-095 | Bruce Lindsey testimony |
| 98-mc-096 | Sidney Blumenthal testimony |
| 98-mc-097 | Nancy Hernreich testimony |
| 98-mc-148 | Secret Service Testimony |
| 98-mc-202 | White House documents |
| 98-mc-267 | Presidential subpoena |
| 98-mc-278 | Lanny Breuer testimony |
| Unknown | Terry Lenzner and Investigative Group Intl., Inc. subpoena. |

CNN/Polantz Unsealing Request at 1.[5]

The first seven of these docket numbers are referenced in the Starr Report, and some, but not all, of the documents entered on the dockets for these matters appear in full or are summarized in the appendices to the Starr Report. *See* Starr Report, Vol. II at 183–200; Feb. 12, 2018 Order at 2. This disclosure was permitted by virtue of the D.C. Circuit's authorization for the Independent Counsel to disclose to the House of Representatives "all grand jury material that the independent counsel deems necessary to comply with the requirements of [28 U.S.C.] § 595(c)," based upon the "'Ex Parte Motion for Approval of Disclosure of Matters Occurring Before a Grand Jury' filed by Independent Counsel [ ] Starr on July 2, 1998," which *ex parte* motion remains sealed with the D.C. Circuit. Order, *In re Madison Guar. Sav. & Loan Ass'n*, Special Div. No. 94-1 (D.C. Cir. filed July 7, 1998), *reprinted in* Starr Report, Vol. II at 10.

These docket numbers were previously sealed and therefore "remain[ed] an opaque SEALED vs. SEALED," CNN/Polantz Unsealing Request at 1, and did not appear on the Federal Judiciary's electronic public access service, PACER. Upon receiving CNN's request, the Court directed the Clerk's Office to unseal the docket numbers and captions associated with the seven identified sealed matters and to "make publicly available promptly on the Court's Case

---

[5] The Miscellaneous case number for the matter described as "Unknown Terry Lenzner and Investigative Group Intl., Inc. subpoena" was not identified in the Starr Report, but the litigation history of that matter was summarized in an Appendix. *See* Starr Report, Vol. II at 199–200. The Clerk of the Court, through its review of these files, later identified Misc. No. 98-77 as the corresponding case number. *See* Minute Order (Mar. 12, 2018).

Management/Electronic Case Filing (CM/ECF) system and PACER these seven Miscellaneous matter numbers, as well as the documents from those matters that have been revealed in full in the Starr Report." Feb. 12, 2018 Order at 3. In addition, DOJ was asked to review these eight dockets to (1) provide the Court with DOJ's "views as to whether the documents remaining under seal in the eight Miscellaneous dockets at issue may be unsealed, (2) confirm that the individuals, who were recipients of the grand jury subpoenas at issue or otherwise involved in these matters, have been notified of the CNN/Polantz Request, and (3) provide *in camera* and *ex parte* any privacy concerns regarding such individuals." *Id.* at 5. DOJ was granted access to the sealed records at issue to facilitate its review. *See* Order, dated Feb. 14, 2018, ECF No. 5.

Former President Clinton intervened as of right in order to represent his interests, *see* Minute Order (dated Feb. 16, 2018), and provided, on February 23, 2018, his views on whether the dockets at issue may be unsealed. *See generally* Status Report of Former President Clinton ("Clinton Status Report"), ECF No. 15. The former President stated his "belie[f] that a great deal of the material at issue has already been made public almost twenty years ago in the 211-page Starr Report, the two-volume, 3183-page Appendices to the Starr Report, and the three-volume, 4610-page Supplemental Materials to the Starr Report," but that "there may be in the sealed dockets material that is still appropriately protected by Rule 6(e) of the Federal Rules of Criminal Procedure." *Id.* at 1–2.

Notably, former President Clinton also identified three additional sealed dockets, "closely related to those identified by Cable News Network," which "should now be unsealed." *Id.* at 2. These dockets—Misc. No. 98-55, Misc. No. 98-177, and Misc. No. 98-228—"contain materials relating to litigation between then-President Clinton and the OIC concerning improper disclosures ('leaks') by the OIC of grand jury material protected by Rule 6(e)." *Id.* at 3. DOJ

was, accordingly, directed to include these three dockets in its review. *See* Minute Order (Feb. 23, 2018). CNN agreed with unsealing these three dockets, in part because disclosure "would further satisfy the substantial public interest in learning more about what led to the impeachment proceedings against President Clinton" and because the OIC "no longer exists and its 1998 investigation has long since concluded." CNN Resp. to Status Report of Former President Clinton ("CNN Resp. Status Report") at 2–3, ECF No. 16.

Former President Clinton also proposed a process by which review of the sealed materials could occur, stating that "it would be appropriate for [DOJ] to notify [former President Clinton] of any putatively protected Rule 6(e) materials that affect [the former President], and to allow counsel to review these materials pursuant to appropriate confidentiality protections (*e.g.*, a non-disclosure agreement). [Former President Clinton] will then be in a position to give the Court knowledgeable notice (in a sealed pleading, as appropriate) of its views." Clinton Status Report at 2. With the concurrence of DOJ, this procedure has been adopted: on March 15, 2018, DOJ sought and was granted permission to disclose certain sealed materials to counsel for former President Clinton "in order to assist government counsel in evaluating whether particular information—currently sealed pursuant to Federal Rule of Criminal Procedure 6(e)—remains privileged and protected by grand jury secrecy." Gov't Counsel's Mot. Allow Counsel for President Clinton Access to Sealed Materials at 1, ECF No. 17; *see also* Order, dated March 15, 2018, ECF No. 18.

Upon completion of its review of both the eight dockets identified by CNN and the three dockets identified by former President Clinton, DOJ responded to CNN's Petition to Unseal and proposed particular documents within each of the eleven dockets that should be unsealed in full or only with redactions, or that should remain under seal. DOJ Resp. at 4–9. DOJ explained

that, in its view, any proposed unsealing should be limited to information already disclosed in the Starr Report—reasoning that grand jury secrecy had been waived—but averred that information not discussed in the Starr Report should remain under seal. *Id.* Further, DOJ posited that, "[t]o the extent Petitioner or Intervenor objects to any redactions pursuant to Criminal Rule 6(e), the Department's view—consistent with the text of Rule [6](e)—is that the Court lacks the authority to unseal grand jury materials for reasons of 'extreme public interest' or any other reason outside the reticulated exceptions to secrecy set forth in Rule 6(e)." *Id.* at 8. DOJ also stated that unsealing could be denied "based on the fact that the events underlying the grand jury proceedings are relatively recent and concern living individuals." *Id.* at 9.[6] DOJ simultaneously filed, *ex parte* and *in camera*, a separate submission detailing its proposed redactions and corresponding reasoning. *See generally* DOJ Notice of In Camera, Ex Parte Submission, ECF No. 21; DOJ In Camera, Ex Parte Submission ("DOJ First Subm."), ECF No. 26.

Any interested parties were invited to respond to DOJ's proposed action, *see* Minute Order (Mar. 26, 2018). CNN was the only party to respond, requesting that the Court "release the contents of all eleven dockets identified by CNN and President Clinton, in the redacted format the government proposes in its *ex parte* submission." CNN's Initial Reply Supp. Pet. Unseal ("CNN Reply") at 2, ECF No. 22. CNN further asked that the Court "direct the government to publicly file a redaction log" and sought "leave to file a supplemental reply in

_____

[6] The Court is cognizant of this concern regarding the privacy of living individuals and, for that reason, both (1) required affirmative outreach by DOJ to the individuals affected by any potential unsealing to seek their views, and (2) invited any interested party to respond to DOJ's proposed unsealing and redactions. *See* Feb. 12, 2018 Order at 5; Minute Order (Mar. 26, 2018). Other than CNN, no interested party filed an objection to DOJ's proposals. As part of its review of these dockets, DOJ "contacted the individuals (and/or their attorneys) whose interests are implicated by the proposed unsealing, including Mr. Lindsey, Mr. Blumenthal, Ms. Hernreich, Mr. Breuer, and counsel for President Clinton, and none objected." DOJ Resp. at 6 n.5. DOJ also contacted attorneys for Terry Lenzner. *See id.* at 7–8; DOJ Second In Camera, Ex Parte Submission ("DOJ Supp. Sub.") at 1–2, ECF No. 27.

support of its Unsealing Request" after reviewing DOJ's redactions. *Id.*[7] Intervenor former

President Clinton has lodged no objections to the redactions or unsealing proposed by DOJ.

After reviewing DOJ's proposed redactions and the underlying documents in the eleven dockets,

the Court directed DOJ to provide additional information regarding its proposed redactions and

sealing, which DOJ provided on April 13, 2018. *See* DOJ Second In Camera, Ex Parte

Submission ("DOJ Supp. Subm.") at 1–2, ECF No. 27. With that supplemental information in

mind, each of the eleven dockets at issue is addressed in turn.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 6(e) prohibits the disclosure of "matter[s] occurring

before the grand jury" and requires that "[r]ecords, orders, and subpoenas relating to grand-jury

proceedings [ ] be kept under seal to the extent and as long as necessary to prevent the

unauthorized disclosure of a matter occurring before a grand jury." FED. R. CRIM. P. 6(e)(2)(B),

(e)(6). Even when an investigation has concluded, grand jury proceedings generally remain

secret in order to "ensure that 'persons who are accused but exonerated by the grand jury will not

be held up to public ridicule.'" *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154

(D.C. Cir. 2007) (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979)).[8]

---

[7]     DOJ objects to CNN's request for a redaction log, arguing that "a private litigant has no right to any Rule 6(e) protected information about what occurs before a grand jury" and that the petition "is not a Freedom of Information Act ('FOIA') request," DOJ Reply to CNN Resp. to DOJ's Views on Unsealing at 1, ECF No. 23, such that a *Vaughn* index, "describ[ing] the documents withheld or redacted and the FOIA exemptions invoked, and explain[ing] why each exemption applies," *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015), is required. The Court agrees. The special process CNN has requested does not comport with grand jury rules, and this matter is not analogous to a FOIA request.

[8]     The Supreme Court articulated, in *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958), six policy reasons for maintaining the secrecy of grand jury proceedings: "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *Id.* at 681 n.6 (internal quotation marks omitted).

Nevertheless, "grand jury secrecy is not unyielding when there is no secrecy left to protect." *Id.* (internal quotation marks and alteration omitted). As the D.C. Circuit has held, "when once-secret grand jury material becomes 'sufficiently widely known,' it may 'lose its character as Rule 6(e) material.'" *Id.* (quoting *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994)).

Grand jury material may also be disclosed under various exceptions listed in Rule 6(e). As enumerated in Rule 6(e)(3), disclosure of grand jury material, other than the grand jury's deliberations or any grand juror's vote, may be made to "(i) an attorney for the government for use in performing that attorney's duty," "(ii) any government personnel . . . that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law," or "(iii) a person authorized by 18 U.S.C. § 3322." FED. R. CRIM. P. 6(e)(3)(A)(i)–(iii).[9] In addition, an attorney for the government may "disclose any grand-jury matter to another federal grand jury," FED. R. CRIM. P. 6(e)(3)(C), and may also disclose "any grand-jury matter involving foreign intelligence, counterintelligence . . . , or foreign intelligence information . . . to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties," FED. R. CRIM. P. 6(e)(3)(D). Finally, a court may authorize disclosure, "at a time, in a manner, and subject to any other conditions that it directs,"

---

[9]    18 U.S.C. § 3322 provides that "[a] person who is privy to grand jury information" that was either "received in the course of duty as an attorney for the government" or "disclosed under rule 6(e)(3)(A)(ii)" may "disclose that information to an attorney for the government for use in enforcing section 951 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 or for use in connection with any civil forfeiture provision of Federal law." 18 U.S.C. § 3322(a). In addition, "[u]pon motion of an attorney for the government, a court may direct disclosure of matters occurring before a grand jury during an investigation of a banking law violation to identified personnel of a Federal or State financial institution regulatory agency." *Id.* § 3322(b)(1).

of grand jury material "preliminarily to or in connection with a judicial proceeding," among other circumstances.  FED. R. CRIM. P. 6(e)(3)(E)(i).[10]

Moreover, as numerous courts have recognized, a district court retains an inherent authority to unseal and disclose grand jury material not otherwise falling within the enumerated exceptions to Rule 6(e).  *See, e.g.*, *Carlson v. United States*, 837 F.3d 753, 763 (7th Cir. 2016) ("Rule 6(e) is 'but declaratory' of the long-standing 'principle' that 'disclosure' of grand jury materials is 'committed to the discretion of the trial court.'" (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959)); *In re Craig*, 131 F.3d 99, 103 (2d Cir. 1997) ("[P]ermitting departures from Rule 6(e) is fully consonant with the role of the supervising court and will not unravel the foundations of secrecy upon which the grand jury is premised."); *In re Petition to Inspect & Copy Grand Jury Materials*, 735 F.2d 1261, 1268 (11th Cir. 1984) ("[I]t is certain that a court's power to order disclosure of grand jury records is not strictly confined to instances spelled out in [Rule 6(e)]."); *see also* LCrR 6.1 ("Papers, orders and transcripts of hearings subject to this Rule, or portions thereof, may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury.").  "The D.C. Circuit has not specifically addressed the question of whether courts have inherent authority to order the release of grand jury records in circumstances not enumerated by Rule 6(e)," *In re Petition of Kutler*,

---

[10]     The other enumerated circumstances for court-authorized disclosure of grand jury materials include "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," or "at the request of the government" in three circumstances: (1) "when sought by a foreign court or prosecutor for use in an official criminal investigation"; (2) "if [the government] shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law"; or (3) "if [the government] shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law."  FED. R. CRIM. P. 6(e)(3)(E)(ii)–(v).

800 F. Supp. 2d 42, 47 (D.D.C. 2011), but has affirmed the district court's exercise of this inherent disclosure authority, *see Haldeman v. Sirica*, 501 F.2d 714, 715 (D.C. Cir. 1974) (indicating "general agreement" with the district court's exercise of inherent authority to disclose grand jury material).[11]

The district court's inherent authority to disclose grand jury proceedings is apparent from both the court's supervisory authority over grand juries and the plain text of Rule 6(e). Grand juries have long been recognized as "a part of the judicial process," *Cobbledick v. United States*, 309 U.S. 323, 327 (1940), and "an appendage of the court," *Brown v. United States*, 359 U.S. 41, 49 (1959), over which the district court exercises supervisory authority, *In re Sealed Case*, 877 F.2d 976, 981 (D.C. Cir. 1989); *see also United States v. Williams*, 504 U.S. 36, 47 (1992) (acknowledging that the grand jury acts "under judicial auspices"); *Levine v. United States*, 362 U.S. 610, 617 (1960) ("The grand jury is an arm of the court . . . . The Constitution itself makes the grand jury a part of the judicial process." (internal quotation marks omitted)). Thus, the "minutes and transcripts" of the grand jury are "records of the court." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 684–85 (1958) (Whittaker, J., concurring); *see also Carlson*, 837 F.3d at 758–59; *Standley v. Dep't of Justice*, 835 F.2d 216, 218 (9th Cir. 1987) ("Grand jury materials are records of the district court."); *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 31 (2d Cir. 1981) ("[G]rand jury proceedings remain the records of the courts, and courts must decide whether they should be made public."); *United States v. Penrod*, 609 F.2d 1092, 1097 (4th Cir. 1979) (concluding that "grand jury minutes . . . are records of the court"). Indeed, prior to the adoption of the Federal Rules of Criminal Procedure, the Supreme Court had held that the release of sealed grand jury materials "rests in the sound discretion of the [trial]

---

[11]     This question is currently pending before the D.C. Circuit. *See McKeever v. Sessions*, No. 17-5149 (D.C. Cir. filed June 26, 2017).

court" and that "disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233–34 (1940); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files.").

Rule 6(e) does not eliminate that authority—rather, the plain text of the Rule supports the court's inherent disclosure authority. The text of the Rule imposes a rule of secrecy on an enumerated list of people, stating that, "[u]nless these rules provide otherwise," the disclosure of "matter[s] occurring before the grand jury" is prohibited by "a grand juror," "an interpreter," "a court reporter," "an operator of a recording device," "a person who transcribes recorded testimony," "an attorney for the government," or "a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)." FED. R. CRIM. P. 6(e)(2)(B)(i)–(vii).[12] The district court is notably absent from this list of the persons bound by Rule 6(e)'s prohibition on disclosure.

Nor do the "exceptions" listed in Rule 6(e)(3) and, in particular, Rule 6(e)(3)(E), impede the court's inherent disclosure authority. District courts are not expressly bound by Rule 6(e)(2) and, therefore, Rule 6(e)(3)'s exceptions to that rule do not affect the court's inherent authority. Moreover, Rule 6(e)(3)(E) lists several circumstances in which the court may, "at a time, in a manner, and subject to any other conditions that it directs," authorize the disclosure of grand jury matter. FED. R. CRIM. P. 6(e)(3)(E). While five specific examples of such situations are listed in the Rule, *see supra*, note 10, this list is not exclusive. Indeed, "[t]he presence of limiting language elsewhere in Rule 6(e)," for example, in Rule 6(e)(2)(B), "indicates that its absence in (3)(E) is intentional." *Carlson*, 837 F.3d at 764. In addition, Rule (6)(e)(3)(E) uses the word

---

[12] Rule 6(e)(3)(A)(ii) permits the disclosure of grand jury matter to "any government personnel—including those of a state, state subdivision, Indian tribe, or foreign government—that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." Rule 6(e)(3)(A)(iii) permits the disclosure of grand jury matter to "a person authorized by 18 U.S.C. § 3322." *See also supra*, note 9.

"may," which "usually implies some degree of discretion," *United States v. Rodgers*, 461 U.S. 677, 679 (1983), and also emphasizes the court's "complete discretion over the manner of disclosure" for the listed situations, *Carlson*, 837 F.3d at 765. Indeed, in recognizing that Rule 6(e)(3)(E) is permissive, not exhaustive, numerous courts have held that district courts have inherent authority to disclose grand jury records in circumstances that are not enumerated in Rule 6(e)(3)(E). *See, e.g.*, *Carlson*, 837 F.3d at 764–65; *Craig*, 131 F.3d at 101–03; *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274, 285 (S.D.N.Y. 1999) ("[A] district court's ability to order release of grand jury materials has never been confined only to application of the exceptions to the secrecy rule specifically enumerated in Rule 6(e)."); *In re Report & Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to House of Representatives*, 370 F. Supp. 1219, 1229 (D.D.C. 1974), *aff'd*, *Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974) (permitting the disclosure of grand jury materials even when none of the enumerated exceptions in Rule 6(e)(3)(E) applied).

The court's inherent authority to disclose grand jury materials resembles, in many ways, a district court's inherent authority to hold litigants in contempt. Although judicial contempt powers are circumscribed both by statute, *see* 18 U.S.C. § 401, and by the Federal Rules, *see* FED. R. CRIM. P. 42, FED. R. CIV. P. 11, 37(b), the Supreme Court has long recognized that "courts possess inherent authority to initiate contempt proceedings for disobedience to their orders," *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987); *see also Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011) (acknowledging that even if a litigant's actions were not sanctionable under Federal Rule of Civil Procedure 11, "sanctions may nonetheless be warranted under the district court's inherent authority"); *Barry v. United States*, 865 F.2d 1317, 1324 n.6 (D.C. Cir. 1989) ("[C]ourts already possess an inherent authority to punish criminal

contempt without additional rules or other legislative enactments.").  Similarly, in the grand jury

context, although various statutes, *see, e.g.*, 18 U.S.C. § 3322, and the Federal Rules of Criminal

Procedure limit the disclosure of grand jury materials, those authorities do not eliminate the

court's inherent authority to determine, in its discretion, whether to disclose such judicial record

materials.  Thus, contrary to DOJ's position, a court may invoke its "inherent supervisory

authority to order the release of grand jury materials" outside the boundaries of Rule 6(e).

*Kutler*, 800 F. Supp. 2d at 47.

The D.C. Circuit has yet to provide guidance to district courts exercising their inherent

authority to disclose grand jury materials outside of Rule 6(e).[13]  Judges on this Court have

therefore turned to a "non-exhaustive list of factors that a court may consider when making such

an assessment," *id.*, outlined by the Second Circuit.  These factors include:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury
> proceeding or the government opposes the disclosure; (iii) why disclosure is being sought
> in the particular case; (iv) what specific information is being sought for disclosure;
> (v) how long ago the grand jury proceedings took place; (vi) the current status of the
> principals of the grand jury proceedings and that of their families; (vii) the extent to
> which the desired material—either permissibly or impermissibly—has been previously
> made public; (viii) whether witnesses to the grand jury proceedings who might be
> affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy
> in the particular case in question.

*Id.* at 47–48 (quoting *Craig*, 131 F.3d at 106).[14]  Regarding the third factor—the reason

disclosure is sought—the Second Circuit has held that "nothing 'prohibits historical interest, on

its own, from justifying the release of grand jury material in an appropriate case.'"  *Id.* (quoting

*Craig*, 131 F.3d at 105).  Rather, "it is 'entirely conceivable that in some situations historical or

---

[13]     The D.C. Circuit has stated, in *dicta*, that "even if there were once a common law right of access to [grand
jury] materials . . . , the common law has been supplanted by Rule 6(e)(5) and Rule 6(e)(6) of the Federal Rules of
Criminal Procedure."  *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998).  The Circuit has not
explained, however, how a district court should proceed when confronted by a situation in which the enumerated
exceptions in Rule 6(e) do not apply.
[14]     These factors substantially overlap with those identified in *United States v. Hubbard*, 650 F.2d 293, 317–22
(D.C. Cir. 1980), but are framed to target more specifically the grand jury context.

public interest alone could justify the release of grand jury information.'" *Id.* (quoting *Craig*, 131 F.3d at 105).

## III. DISCUSSION

In this matter, CNN seeks the unsealing of eleven previously sealed Miscellaneous dockets, either expressly referenced, or related to dockets referenced, in the Starr Report. CNN has objected generally to keeping any materials within these eleven dockets under seal. *See* CNN Reply at 2. At the Court's request, DOJ reviewed the dockets at issue and provided its views on whether to unseal the dockets.

In arguing for the continued sealing of certain materials within these dockets, DOJ avers that "the Court lacks the authority to unseal grand jury materials for reasons of 'extreme public interest,' or any other reason outside the reticulated exceptions to secrecy set forth in Rule 6(e)." DOJ Resp. at 8 (quoting CNN/Polantz Unsealing Request at 3). CNN, however, "does not share the government's narrow view of the Court's authority to release grand jury materials" and notes that DOJ's view "has been widely rejected." CNN Resp. at 2 n.1 (citing *Carlson*, 837 F.3d at 765–66; *Craig*, 131 F.3d 99; *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973); *In re Petition to Inspect & Copy*, 735 F.2d 1261; and *Haldeman*, 501 F.2d 714 (D.C. Cir. 1974)). The Court agrees with CNN. Given the voluminous grand jury materials already disclosed in the Starr Report, however, even under its "narrow view," DOJ also concurs with unsealing significant portions of these sealed dockets. Accordingly, for the reasons discussed below, CNN's petition is granted in large part, but certain documents within some of the dockets shall remain under seal.[15]

---

[15] DOJ correctly observes that "placeholders in some files indicate that Chief Judge Norma Holloway Johnson on occasion received certain materials from the Office Independent Counsel and others, *ex parte*, for the purpose of showing need or establishing privilege" and that "[t]he ex parte materials themselves were not included in the files made available to counsel." DOJ Resp. at 5 n.2. These *ex parte* materials are not available in the case files or to the Court and, consequently, are not addressed in this Memorandum Opinion and accompanying order. In

As discussed, the *Craig* factors guide this analysis. Given the nature of the dockets at issue and their connection to the same grand jury proceedings, the analysis of a particular *Craig* factor is often the same for each docket. Specifically, the first factor, the identity of the party seeking disclosure; the third factor, the reason for seeking disclosure; the fourth factor, the specific information sought to be disclosed; the fifth factor, how long ago the grand jury proceedings took place; and the sixth factor, the current status of the principals of the grand jury proceedings and that of their families, are the same in each case: CNN seeks disclosure of all documents in each listed docket pertaining to grand jury proceedings that took place two decades ago, because disclosure "would further satisfy the substantial public interest in learning more about what led to the impeachment proceedings against President Clinton and in better understanding past interactions between independent prosecutors and the Executive Branch," CNN Resp. Status Report at 2, and "there is much to be learned from reviewing the procedures utilized to gain compliance with a grand jury subpoena over executive branch objections, both in proceedings before the court but also as to the pre-conflict interactions between the parties typically included as exhibits to motions and memoranda." CNN/Polantz Unsealing Request at 3. Similarly, the principals of the grand jury investigation and their status are the same for each docket: these dockets arise from a grand jury investigation into former President Clinton, who notably does not object to the disclosure of these dockets. *See* Clinton Status Report at 3; DOJ Resp. at 6 n.5. These five factors weigh heavily in favor of disclosure in each matter.

Several factors, however, differ from docket to docket. These include the second, seventh, eighth, and ninth factors: "whether the defendant to the grand jury proceeding or the

---

addition, in Misc. No. 98-55, Misc. No. 98-95, Misc. No. 98-148, Misc. No. 98-177, and Misc. No. 98-228, certain documents are not in the paper folders for these dockets. If located, these records will be reviewed to determine whether they should be made publicly available.

government opposes the disclosure"; "the extent to which the desired material—either permissibly or impermissibly—has been previously made public"; "whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive"; and "the additional need for maintaining secrecy in the particular case in question." *Craig*, 131 F.3d at 106. These four factors will be considered in turn for each docket.

### A. Documents Pertaining to a Separate Judicial Misconduct Investigation

Two documents in each docket pertain to a separate judicial misconduct complaint, in which the outside attorney named to investigate that complaint sought access, pursuant to Rule 6(e), to numerous sealed records in these dockets. The Independent Counsel in the Clinton investigation thus filed a motion to permit the outside investigator access to certain grand jury records, and the Court issued an order on that motion.

These two documents in each of the eleven dockets will remain under seal. Turning to the *Craig* factors, DOJ opposes the disclosure of these documents because they show which documents were involved in the misconduct investigation and, as such, are accompanied by certain privacy interests not attendant to the other documents at issue in CNN's request. *See* DOJ Resp. at 4. In addition, 28 U.S.C. § 360(a) requires confidentiality with respect to all files "related to" judicial misconduct investigations, including "all papers, documents, and records of proceedings." Further, these documents have never been made publicly available. The additional need for secrecy is furthered by the weak connection between these documents and the documents that are the targets of CNN's unsealing request: in each docket, these two documents were introduced for the purpose of allowing the outside attorney to investigate the separate claims of judicial misconduct and offered no factual details or legal conclusions about the OIC

investigation. Thus, the two documents in each matter that pertain to the separate judicial misconduct investigation shall remain under seal.[16]

### B. Misc. No. 98-55, Misc. No. 98-177, and Misc. No. 98-228

Three matters—Misc. No. 98-55, Misc. No. 98-177, and Misc. No. 98-228—brought by former President William Jefferson Clinton, Bruce R. Lindsey, and Sidney Blumenthal against the OIC, concern "litigation between then-President Clinton and the OIC concerning improper disclosures ('leaks') by the OIC of grand jury material protected by Rule 6(e)." Clinton Status Report at 3. The petitioner in each of these cases requested, between February 9, 1998, and June 16, 1998, that the Court issue an order to show cause why the OIC should not be held in contempt for violating Rule 6(e), which prohibits prosecutors, grand jurors, and certain other individuals other than witnesses from disclosing "matter[s] occurring before the grand jury." FED. R. CRIM. P. 6(e)(2); *see also* Clinton Status Report at 2 n.4. By virtue of those prior leaks to the media, much of the information in these three dockets otherwise protected under Rule 6(e) was publicly disclosed. *See* Clinton Status Report at 2 n.4.

These three dockets were consolidated by the Court, which issued a single Order to Show Cause dated June 19, 1998, granting all three motions. *See* Misc. No. 98-55, ECF No. 30; Misc. No. 98-177, ECF No. 16; Misc. No. 98-228, ECF No. 2. The vast majority of the documents in these matters have already been unsealed by court orders in 1999 or were not filed under seal. *See* Order, dated Jan. 4, 1999, Misc. No. 98-55, ECF No. 88; Order, dated Jan. 25, 1999, Misc. No. 98-55, ECF No. 95; Order, dated Jan. 4, 1999, Misc. No. 98-177, ECF No. 34; Order, dated

---

[16] These documents that will remain under seal are: in Misc. No. 98-55, documents 118 and 119; in Misc. No. 98-77, documents 8 and 9; in Misc. No. 98-95, documents 84 and 85; in Misc. No. 98-96, documents 41 and 42; in Misc. No. 98-97, documents 30 and 31; in Misc. No. 98-148, documents 43 and 44; in Misc. No. 98-177, document 50 and the docket entry of May 22, 2000; in Misc. No. 98-202, documents 7 and 8; in Misc. No. 98-228, document 33 and the docket entry of May 22, 2000; and in Misc. No. 98-278, documents 23 and 24.

Jan. 25, 1999, Misc. No. 98-177, ECF No. 35; Order, dated Jan. 4, 1999, Misc. No. 98-228, ECF

No. 20; Order, dated Jan. 25, 1999, Misc. No. 98-228, ECF No. 21.  The dockets, however,

remained under seal, thus preventing public access to these already unsealed materials.  In

addition, several documents in each docket—including the Court's June 19, 1998 Order to Show

Cause resolving each petitioner's motion for an order to show cause why the OIC should not be

held in contempt for improperly disclosing grand jury material—remain under seal.

The *Craig* factors weigh in favor of unsealing the documents in these matters, except for

the two documents in each docket related to the judicial misconduct investigation and slight

redactions to two other documents.[17]  As for previous disclosure, this factor weighs in favor of

unsealing because "[m]any of the documents in these files are unsealed" and "the underlying

information and testimony was included in the [Starr Report], its Appendices and Supplemental

Materials."  DOJ Resp. at 8.  In addition, most of these files do not pertain to particular witnesses

appearing before the grand jury.  Some redactions are warranted, however, to prevent the

disclosure of individuals who may or may not have appeared before the grand jury.  Such

information remains protected by Rule 6(e), and accordingly, one document in Misc. No. 98-55,

in which the OIC was proposing redactions to a certain document in Misc. No. 98-177, as well as

the one document in Misc. No. 98-177 to which OIC proposed redactions, shall be redacted to

prevent the disclosure of individuals who may or may not have appeared before the grand jury.[18]

Finally, the additional need for maintaining the secrecy of these dockets is low, given that

"the grand jury investigation at issue" in these dockets "concluded nearly two decades ago" and

"the subject matter of this litigation did not involve consideration of secret grand jury materials

---

[17]    The only party to object to a full unsealing of this docket is DOJ, which objects to the disclosure of the two documents related to the judicial misconduct investigation described above, *supra* Part III.A, and the Court agrees that these two documents shall remain under seal.

[18]    These documents include Misc. No. 98-55, ECF No. 60, and Misc. No. 98-177, ECF No. 9.

but rather the improper disclosure of such information on the public record." Clinton Status Report at 3–4. Thus, the *Craig* factors weigh in favor of unsealing these three dockets with the exceptions described above and, accordingly, all documents still under seal in Misc. No. 98-55, Misc. No. 98-177, Misc. No. 98-228, except for the two filings in each matter pertaining to the separate judicial misconduct investigation and the two redacted documents discussed above, shall be unsealed. The two excepted documents pertaining to the misconduct investigation shall remain fully under seal. With the unsealing of these dockets, the previously unsealed materials will also now be publicly accessible on CM/ECF and PACER.

### C.    Misc. No. 98-77

This docket concerns a subpoena issued to Terry Lenzner and his company, Investigative Group International, Inc. ("IGI"). *See* Starr Report, Vol. II at 199–200.[19] "After hearing reports that Mr. Lenzner and IGI were researching the private lives of career prosecutors," the OIC issued a subpoena to "try to determine whether this was true and, if so, whether this was part of [a] scheme to obstruct the OIC's investigation." *Id.* at 199. Lawyers for former President Clinton moved to quash the grand jury subpoena issued to Mr. Lenzner and IGI, claiming "attorney-client privilege and work product protection." *Id.* Mr. Lenzner then "appear[ed], provide[d] a privilege log of documents, and refuse[d] to reveal the general subject matter of his retention." *Id.* The OIC opposed the motion to quash on the grounds that "the attorney-client privilege does not protect the general subject matter of retention, amount of fees, or identity of fee payer." *Id.* Ultimately, Mr. Lenzner was ordered to "provide all fee information to the grand jury," but "the general subject matter of his retention [wa]s protected by the attorney-client

---

[19] Although the Starr Report does not identify the docket number associated with the "Terry Lenzner Subpoena" matter, the Clerk's Office, in its review of the materials at issue in this matter, discovered that this matter was docketed as Misc. No. 98-77.

privilege." *Id.* at 200. Neither this docket number nor any of the nine documents it contains has previously been unsealed, including the Memorandum Opinion issued on July 29, 1998, granting former President Clinton's motion to quash.

The *Craig* factors again counsel in favor of disclosure. As for the second and eighth factors, both DOJ and counsel for Mr. Lenzner, the witness at issue in this docket, agree that this matter may be unsealed, with certain redactions to protect Mr. Lenzner's ongoing privacy interests.[20] DOJ Supp. Subm. at 1–6. Former President Clinton concurs in Mr. Lenzner's position. *Id.* at 2. Although the Starr Report contains a detailed history of the litigation surrounding the subpoena issued to Mr. Lenzner, *see* Starr Report, Vol. II at 199–200, the Starr Report does not include details regarding Mr. Lenzner's testimony, the information the OIC had hoped to elicit from Mr. Lenzner, and other details surrounding Mr. Lenzner's employment. Certain redactions to the documents in this matter are therefore warranted, and certain exhibits, including a copy of the grand jury subpoena issued to Mr. Lenzner, transcripts of grand jury proceedings, and other records produced to the grand jury, shall remain under seal to protect the disclosure of specific matters occurring before the grand jury and to respect Mr. Lenzner's ongoing privacy interests.

Regarding the seventh and ninth *Craig* factors, no part of this docket has previously been made publicly available, although a description of the litigation history appears in the Starr Report. *See id.* Thus, an entire eleven-page judicial opinion issued on July 29, 1998, remains under seal. While the continued secrecy of judicial opinions regarding grand jury matters is necessary to protect the integrity of an ongoing investigation, that need for secrecy decreases once the investigation ends and continues to diminish over time. The public has an overarching

---

[20] DOJ objected to the disclosure of the two documents related to the judicial misconduct investigation analyzed above, *supra* Part III.A, and the Court agrees that these two documents shall remain under seal.

interest in the accessibility of judicial opinions. As the Supreme Court has recognized, judicial opinions are "valuable to the legal community as a whole" and "are not merely the property of private litigants." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). Indeed, "[a] court's decrees, its judgments, its orders, are the quintessential business of the public's institutions." *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). The "presumption in favor of public access to judicial proceedings" is therefore "especially strong" when examining judicial opinions, *id.* (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)), and the additional need for maintaining the secrecy of this judicial opinion is low, especially in light of the extensive public discussion of this matter in the Starr Report. Thus, given the public interest in judicial opinions and the lack of objections from the interested parties, the July 29, 1998 Memorandum Opinion shall be unsealed with one redaction to protect the timing of Mr. Lenzner's employment, which remains protected under Rule 6(e) and does not appear to be significant in the reasoning laid out in the July 29, 1998, Memorandum Opinion.

Accordingly, because the *Craig* factors weigh in favor of disclosure and because the interested parties do not object to disclosure, this docket and its component documents shall be unsealed, with the exception of the two documents related to the judicial misconduct investigation, which shall remain fully under seal, and the redactions discussed above to protect information pertaining to matters occurring before the grand jury and Mr. Lenzner's privacy.

### D.  Misc. No. 98-95, Misc. No. 98-96, Misc. No. 98-97, and Misc. No. 98-278

These four matters—Misc. No. 98-95, Misc. No. 98-96, Misc. No. 98-97, and Misc. No. 98-278—involve the grand jury testimony of Bruce Lindsey, former Deputy White House Counsel; Sidney Blumenthal, former Assistant to the President; Nancy Hernreich, former Deputy Assistant to the President and Director of Oval Office Operations; and Lanny Breuer, former

Special Counsel to the President, respectively. *See* Starr Report, Vol. I at vi; *id.*, Vol. II at 185–93. The first three matters—Misc. No. 98-95, Misc. No. 98-96, and Misc. No. 98-97—were initiated by the OIC, which moved to compel Mr. Lindsey, Mr. Blumenthal, and Ms. Hernreich to testify before the grand jury regarding matters for which the witnesses had previously asserted executive privilege, attorney-client privilege, or work-product protection. *See id.*, Vol. II at 187. These matters were eventually consolidated and, after a hearing on the issue of executive privilege, resolved in a single Memorandum Opinion, dated May 1, 1998, granting the motions to compel as to Mr. Lindsey and Mr. Blumenthal, *id.* at 188–89, while the White House dropped its assertions of privilege by Ms. Hernreich, *id.* at 187. The fourth matter in this set, Misc. No. 98-278, was initiated by Mr. Breuer, who sought an emergency stay of a subpoena requiring him to testify before the grand jury. *Id.* at 191–92. Mr. Breuer's motion for a stay was denied and the OIC's motion to compel his testimony was later granted in a Memorandum Order dated August 11, 1998. *Id.*

The procedural history of each of these cases is well documented in the Starr Report, *id.* at 185–93, and the White House's Opposition to the Independent Counsel's Motions to Compel Bruce R. Lindsey and Sidney Blumenthal to Testify Concerning Conversations Protected by the Attorney-Client, Presidential Communications, and Work Product Privileges, including exhibits, was reprinted in full in an Appendix to the Starr Report. *See id.*, Vol. V at 2025–2138. In addition, several documents in each matter were unsealed by court order during the pendency of that litigation. Specifically:

- Of the eighty-five documents in Misc. No. 98-95, nine are already unsealed by virtue of either their inclusion in the Starr Report, *see* Misc. No. 98-95, ECF No. 9, *reprinted in*

Starr Report, Vol. V at 2025–2138, or a 1998 court order directing their unsealing, *see id.*, ECF No. 72;

- Of the forty-four documents in Misc. No. 98-96, four are already unsealed by a 1998 court order, *see* Misc. No. 98-96, ECF No. 35;

- Of the thirty-one documents in Misc. No. 98-97, four are already unsealed by a 1998 court order, *see* Misc. No. 98-97, ECF No. 26; and

- Of the twenty-nine documents in Misc. No. 98-278, eighteen are already unsealed, because they were included in the Starr Report, *see* Misc. No. 98-278, ECF No. 10; a 1998 court order directed their unsealing, *see* Misc. No. 98-278, ECF Nos. 17, 22; or they were not filed under seal.

Notably, the August 11, 1998, Memorandum Order in Misc. No. 98-278, granting the OIC's motion to compel Mr. Breuer's testimony, was reprinted in full in the Starr Report, *see* Starr Report, Vol. VI at 2477–87, and a redacted version of the consolidated May 1, 1998, Memorandum Opinion granting the OIC's motions to compel Mr. Lindsey's and Mr. Blumenthal's testimony has been published, with approximately thirty-six paragraphs redacted. *See generally In re Grand Jury Proceedings*, 5 F. Supp. 2d 21 (D.D.C. 1998).

Given this previous disclosure, and the absence of objections from any of the subjects of these dockets, these four matters will be unsealed. DOJ is the only party to object to the full disclosure of these dockets. *See* DOJ First Subm. at 3; DOJ Supp. Subm. at 6. DOJ proposes redacting one sentence from the consolidated May 1, 1998, Memorandum Opinion in Misc. No. 98-95, Misc. No. 98-96, and Misc. No. 98-97 to protect information about the number of White House employees who were interviewed by the OIC or who appeared as witnesses before the

grand jury.  *See* DOJ Resp. at 5–6; DOJ First Subm. at 3.[21]  The Starr Report, however, includes the August 11, 1998, Memorandum Order from Misc. No. 98-278, stating that:

> OIC has issued 23 subpoenas *duces tecum* to the White House since the beginning of its investigation and has issued one to President Clinton individually.  Declaration of Julie A. Corcoran ¶ 4.  In addition, the OIC interviewed eighty current or former White House employees during its investigation and thirty-five current or former White House employees have testified before the grand jury.  Declaration of Patrick F. Fallon, Jr. ¶¶ 4–5.

Starr Report, Vol. VI at 2485.  DOJ contends that, because the numbers made public in the Starr Report differ from the numbers cited more than three months earlier in the consolidated May 1, 1998, Memorandum Opinion, unsealing this sentence in the Memorandum Opinion would reveal the progress of the investigation as of May 1, 1998.  DOJ Supp. Subm. at 6.  This argument is unpersuasive.  In the span of a multi-year investigation, it is only logical that the number of witnesses interviewed or called to testify before the grand jury would increase.  Given that the Starr Report has already disclosed information about the number of White House employees who were interviewed by the OIC or who appeared before the grand jury, the continued sealing of such information is unwarranted.

As to the remaining *Craig* factors, the extent of previous public access to these four Miscellaneous matters has been significant since the Starr Report contains detailed descriptions of these matters, a full copy of the White House's opposition to the motions to compel testimony, and a complete copy of the August 11, 1998, Memorandum Order in Misc. No. 98-278.  *See* Starr Report, Vol. II at 185–93; *id.*, Vol. V at 2025–138; *id.*, Vol. VI at 2477–87.

Regarding the eighth *Craig* factor—whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive—as part of its review of these dockets, DOJ

---

[21]    DOJ also objected to the disclosure of the two documents related to the judicial misconduct investigation analyzed above, *supra* Part III.A, and the Court agrees that these two documents shall remain under seal.

"contacted the individuals (and/or their attorneys) whose interests are implicated by the proposed unsealing, including Mr. Lindsey, Mr. Blumenthal, Ms. Hernreich, Mr. Breuer, and counsel for President Clinton, and none objected." DOJ Resp. at 6 n.5. The additional need for maintaining the secrecy of this matter is therefore low, and accordingly, Misc. No. 98-95, Misc. No. 98-96, Misc. No. 98-97, and Misc. No. 98-278 shall be unsealed, except for the two documents in each docket that pertain to the separate judicial misconduct investigation, which two documents shall remain fully under seal. Thus, the May 1, 1998, Memorandum Opinion, which to date has been available only in highly redacted form, will be unsealed in full.

### E.    Misc. No. 98-148

The matter docketed at Misc. No. 98-148 concerns "Secret Service Testimony" given before the grand jury. Starr Report, Vol. II at 197. On March 23, 1998, the OIC deposed former Secret Service General Counsel John Kelleher, who asserted the "protection function" privilege and the governmental attorney-client privilege. *Id.* at 194. The OIC later initiated a judicial proceeding to compel the testimony of various Secret Service personnel over these claims of privilege. *Id.* Five days after the Court ruled that there is no "protective function" privilege for Secret Service personnel and ordered the OIC to provide "a need showing to overcome governmental attorney-client privilege as to John Kelleher," *id.* at 195, the OIC withdrew its request that Mr. Kelleher testify before the grand jury, *id.* The district court's decision was affirmed on appeal, *id.* at 196, and, a week later, six Secret Service personnel received subpoenas to testify before the grand jury, *id.* As with the dockets discussed above, extensive details of this litigation appear in the Starr Report. *Id.* at 193–97. In addition, nine of the forty-seven documents in this matter were filed in redacted form, not under seal.

This docket will be unsealed, with certain redactions as necessary to protect ongoing privacy interests. DOJ is the only party to object to full disclosure of this matter. Specifically,

DOJ objects to the disclosure of the names and testimony of two Secret Service employees who testified before the grand jury, since those two names are not included in the Starr Report or in any of the documents made public in this matter. *See* DOJ Resp. at 6–7.[22] These employees' identities thus remain protected by Rule 6(e) and, given the strength of their privacy interests and the possibility of prejudice to these unnamed individuals, their names shall be redacted from the documents being unsealed.

DOJ also urges that further redactions are warranted because "one Secret Service lawyer litigated the governmental attorney client privilege in response to a grand jury subpoena," and "[n]o testimony from that attorney was included" in the Starr Report. DOJ Resp. at 7. The Starr Report reveals that this lawyer is John Kelleher, former General Counsel of the Secret Service, who "assert[ed] the 'protection function' privilege and the governmental attorney-client privilege." Starr Report, Vol. II at 194. DOJ proposes additional redactions to certain documents to protect information about Mr. Kelleher's deposition testimony, including the substance of that testimony and citations to the deposition transcript, which information was not discussed in the Starr Report. *See* DOJ Resp. at 7. While deposition testimony ordinarily might not be considered a "matter occurring before the grand jury," FED. R. CRIM. P. 6(e)(2)(B), the parties had agreed that Mr. Kelleher's deposition would be taken in lieu of live testimony before the grand jury and that his deposition testimony and the evidence received in the deposition would constitute grand jury material for the purposes of Rule 6(e). As part of its review of these matters, DOJ confirmed with Mr. Kelleher that his deposition was taken in lieu of live testimony before the grand jury. *See* DOJ Supp. Subm. at 7 & n.3. Accordingly, references to Mr.

---

[22] DOJ also objects to the disclosure of two documents in this matter that pertain to the same judicial misconduct investigation analyzed above, Part III.A, *supra*, and the Court agrees that these two documents shall remain under seal.

Kelleher's deposition and the substance of that testimony are protected by Rule 6(e), and appropriate redactions shall be made to prevent the disclosure of that information.

Regarding previous disclosure, nine documents in this matter were publicly filed, including the OIC's motion to compel Secret Service personnel to testify before the grand jury regarding matters for which they had previously asserted privilege, Misc. No. 98-148, ECF No. 6, and DOJ's response in opposition to that motion to compel, *id.*, ECF No. 7. These publicly filed documents included declarations from former Directors of the Secret Service detailing Secret Service training procedures, methods of protection, the positioning of Secret Service officers, simulations run by Secret Service, and other details of methods and practices, including photographs identifying the placement of Secret Service officers around the President. *See* DOJ Opp'n OIC Mot. Compel, Ex. 1, Declaration of Lewis C. Merletti, Misc. No. 98-148, ECF No. 7 at 47–101; *id.*, Ex. 3, Declaration of John W. Magaw, Misc. No. 98-148, ECF No. 7 at 102–09; *id.*, Ex. 4, Declaration of Eljay B. Bowron, Misc. No. 98-148, ECF No. 7 at 110–17. In addition, many details about the history of this proceeding are recounted in the Starr Report. Starr Report, Vol. II at 193–97. Thus, given this previous public disclosure, the need to maintain the secrecy of this docket is low and the *Craig* factors weigh in favor of unsealing. Accordingly, the thirty-eight documents remaining under seal in Misc. No. 98-148, shall be unsealed with the redactions noted above.

## F.  Misc. No. 98-202

This matter, Misc. No. 98-202, concerns the OIC's "motion to compel the White House to comply with grand jury subpoenas for President Clinton's meeting records and phone logs." *Id.* at 197. As described in the Starr Report, "[t]he White House had been redacting such documents on relevancy grounds and refusing to provide phone logs unless the OIC gave them a list of all persons in which the grand jury was interested." *Id.* The White House opposed this

motion, while "tr[ying] to 'reserve[ ] the right to assert executive privilege over the material.'"
*Id.* The OIC's motion was eventually granted in a Memorandum Order issued on June 26, 1998.
*Id.* at 198. None of the eight documents on this docket, including the June 26, 1998,
Memorandum Order, has previously been unsealed.

Despite the lack of previous public access to these records, the *Craig* factors again weigh
in favor of unsealing this matter with certain redactions as necessary to protect information still
covered by Rule 6(e). Many details about the document subpoenas at issue were included in the
Starr Report. Nevertheless, DOJ—the only objecting party—contends that certain information
pertaining to the subpoenas ought to be redacted. Specifically, DOJ avers that although the Starr
Report mentions certain documents within the scope of subpoena D1248, including "presidential
call log[s]," a "telephone memorandum," "diarist schedule notes," and "daynotes," *id.*, Vol. V at
1633, certain other types of documents that fell within the scope of subpoena D1248 were not
mentioned in the Report. DOJ First Subm. at 3–5. Given the details given in the Starr Report
about this subpoena, however, and the fact that this subpoena was issued in connection with an
investigation that ended nearly two decades ago, the need for maintaining the secrecy of other
types of documents demanded by this subpoena is low. The only information that remains
protected by Rule 6(e) is the information associated with a second document subpoena, which
subpoena was not identified by number in the Starr Report. Thus, certain redactions will be
made to protect the number of, and specific information targeted by, this subpoena, which is still
protected by Rule 6(e).[23]

---

[23] DOJ also objects to the disclosure of the two documents in this matter that pertain to the judicial
misconduct investigation discussed above, Part III.A, *supra*, and the Court agrees that these two documents shall
remain under seal.

As for the remaining *Craig* factors, no objections other than the request for redactions from DOJ have been lodged. This docket pertains to subpoenas to the White House for document production and, accordingly, witnesses are unlikely to be prejudiced by disclosure. Further, for the reasons detailed *supra*, Part III.C, the overarching interest in the accessibility of judicial opinions militates strongly in favor of unsealing the June 26, 1998, Memorandum Order and the legal briefing underlying the judicial record. Finally, as discussed above, the need for maintaining secrecy is low given the amount of previous disclosure regarding the substance of this docket and the scope of the subpoenas at issue. Thus, this matter shall be unsealed with the aforementioned redactions.

### G.     Misc. No. 98-267

This matter, Misc. No. 98-267, concerns a grand jury subpoena issued to former President Clinton. Starr Report, Vol. II at 198–99. Former President Clinton moved for a continuance extending the time within which he could decide whether to testify or oppose the subpoena, and a hearing was held on this motion. *Id.* at 199. After negotiations between David Kendall, former President Clinton's private attorney, and Robert Bittman, Deputy Independent Counsel, former President Clinton agreed to testify before the grand jury and withdrew his motion for a continuance. *Id.* at 198–99. Both former President Clinton's motion for a continuance and the transcript from the hearing on the motion were reprinted in full in the Starr Report. *Id.*, Vol. VI at 2279–2365; *id.*, Vol. VI at 2369–2403.

Given the nearly full public disclosure of this entire docket, the *Craig* factors decisively favor unsealing. The only document remaining under seal is former President Clinton's withdrawal of his motion for a continuance. Importantly, counsel for President Clinton—the witness at issue in this matter—does not object to the unsealing of this docket. DOJ Resp. at 7.

Moreover, the need to maintain the secrecy of this matter is nullified in the face of the docket's near-complete disclosure in the Starr Report. Thus, this docket shall be unsealed in its entirety.

## IV. CONCLUSION

DOJ's prompt attention to this matter and diligence in reviewing the files requested for unsealing is greatly appreciated. For the foregoing reasons, CNN's petition is largely granted and the eleven Miscellaneous dockets at issue—Misc. No. 98-55, Misc. No. 98-77, Misc. No. 98-95, Misc. No. 98-96, Misc. No. 98-97, Misc. No. 98-148, Misc. No. 98-177, Misc. No. 98-202, Misc. No. 98-228, Misc. No. 98-267, and Misc. No. 98-278—shall be unsealed in the manner described above and made publicly accessible on the Court's CM/ECF and PACER systems.

This Memorandum Opinion unseals certain material that DOJ requested to remain under seal. Consequently, the unsealing contemplated by this Memorandum Opinion shall be stayed for a short period of three days, until April 19, 2018, at 12:00 p.m., for DOJ to notify the Court whether it intends to pursue an appeal of the proposed unsealing.

An appropriate Order accompanies this Memorandum Opinion.

Date: April 16, 2018

_____
BERYL A. HOWELL
Chief Judge